**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JON HENSON and LAUREN HENSON, individually and on behalf of all others similarly situated; | Case No.: |
| *Plaintiffs*, | **COMPLAINT-CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| YOUNG CONSULTING, LLC, | |
| *Defendant*. | |

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Jon and Lauren Henson, individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Defendant Young Consulting, LLC ("Defendant" or "Young Consulting") upon personal knowledge with respect to themselves and their counsel's investigations, and upon information and belief as to all other matters, as follows:

## I.     INTRODUCTION

1.     This class action arises out of the recent data security incident and data breach that was perpetrated against Defendant (the "Data Breach"), which held in its possession certain personally identifiable information ("PII") and protected health information ("PHI") (collectively, the "Private Information") of Plaintiffs and members of the proposed Class, where Plaintiffs and the Class are current and former customers/insureds of Defendant's clients. This Data Breach occurred between April 10-13, 2024.

2.     Young Consulting provides integrated software solutions for the "marketing, underwriting and administering of medical stop loss insurance for insurance carriers, brokers and third-party administrators."[1]

3.     The Private Information compromised in Defendant Young Consulting's Data Breach included certain personal or protected health information of individuals, including Plaintiffs. This Private Information included but is not limited to "individuals' names, Social Security numbers, date of birth, and [health] insurance policy/claim information."[2]

4.     The Private Information was "accessed and/or acquired" by unauthorized actors, or cyber-criminals, who perpetrated the attack and remains in the hands of those cyber-criminals. According to Defendant's alleged report to its client, Blue Shield of California, 954,177 or more individuals' Sensitive Data was compromised.[3]

5.     The Data Breach resulted from Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect individuals' Private Information with which they were entrusted for either treatment or employment or both.

6.     Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that they collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and other Class Members that their information was subjected to unauthorized access by an unknown third party and precisely what specific type of information was accessed.

---

[1] https://www.youngconsulting.com/ (last viewed September 5, 2024).

[2] Defendant, *Notice of Data Security Incident*, *available at* https://youngconsulting.com/notice/youngconsulting-notice.html (last viewed September 5, 2024)

[3] https://www.prnewswire.com/news-releases/privacy-alert-young-consulting-and-blue-shield-of-california-under-investigation-for-data-breach-of-over-954-000-patient-records-302236438.html (last viewed Sept. 5, 2024)

7.      Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

8.      Defendant, through its employees, disregarded the rights of Plaintiffs and Class Members (defined below) by, among others, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions. Defendant also failed to disclose that it did not have adequately robust computer systems and security practices to safeguard Plaintiffs' and Class Members' Private Information and failed to take standard and reasonably available steps to prevent the Data Breach.

9.      In addition, Defendant's employees failed to properly monitor the computer network and systems that housed the Private Information. Had Defendant's employees (presumably in the IT department) properly monitored its property, it would have discovered the intrusion sooner.

10.     Plaintiffs' and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained is now in the hands of data thieves.

11.     Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including. These crimes include opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members'

information, filing false medical claims using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

12.     Because of the Data Breach, Plaintiffs and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

13.     Plaintiffs and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

14.     Through this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed during the Data Breach.

15.     Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

16.     Accordingly, Plaintiffs sue Defendant seeking redress for their unlawful conduct, and asserting claims for: (i) negligence, (ii) negligence *per se*, (iii) breach of third party beneficiary contract, and (v) unjust enrichment.

## II.     PARTIES

17.     Plaintiff Jon Henson is and at all times mentioned herein was an individual citizen of California, residing in the city of Pleasant Hill.

18.     Plaintiff Lauren Henson is and at all times mentioned herein was an individual citizen of California, residing in the city of Pleasant Hill.

19.     Plaintiffs provided Defendant's client with their sensitive PII and PHI to receive medical insurance and health care services.

20.     Plaintiffs reasonably expected and understood that Defendant would take, at a minimum, industry standard precautions to protect, maintain, and safeguard their Private Information from unauthorized users or disclosure, and would timely notify them of any data security incidents related to the same. Plaintiffs would not have provided their Private Information to Defendant had they known that Defendant would not take reasonable steps to safeguard it.

21.     Plaintiffs are very careful about sharing their sensitive PII and PHI. They have never knowingly transmitted unencrypted sensitive PII or PHI over the internet or any other unsecured source. Plaintiffs also store any documents containing their sensitive information in a safe and secure location or destroy the documents. Moreover, they diligently choose unique usernames and passwords for their various online accounts.

22.     Because of the Data Breach and at the recommendation of Defendant's breach letter, Plaintiffs made reasonable efforts to mitigate the effect of the Data Breach, including, but not limited to, researching the Data Breach, reviewing financial statements, monitoring their credit information, and changing passwords on their various accounts.

23.     Plaintiffs has spent much time responding to the dangers from the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including, but not limited to work and recreation.

24.     Defendant Young Consulting is a Georgia based entity incorporated in Georgia that provides software services and claims administration for insurance carriers and third party administrators across the nation.[4] Defendant's principal place of business is 180 Interstate North

---

[4] https://www.youngconsulting.com/ (last viewed September 5, 2024).

Parkway SE, Ste. 400, Atlanta, GA 30339. Defendant's Registered Agent is CT Corporation System, 289 South Culver Street, Lawrenceville, GA, 30046.

25.     Young Consulting is sued both directly and vicariously based on the doctrine of *respondeat superior* under Georgia law, as it is responsible for the actions of all its agents and employees performed in the course and scope of their employment and/or agency. All the actions alleged here by agents and employees of Young Consulting were so performed. Thus, Young Consulting is liable for the actions of all its employees and agents, named or unnamed, who performed acts at issue in this lawsuit, all of whom were acting in the course and scope of their employment and/or agency. The actions alleged here were undertaken by Young Consulting by custom and policy of those entities, making it independently liable under federal law.

### III.     JURISDICTION AND VENUE

26.     This court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. Upon information and belief, the number of class members is 954,177, many of whom currently have different citizenship from Defendant, including Plaintiffs. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

27.     This Court has general personal jurisdiction over Defendant because it is an entity based and operating in this District and the acts and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

28.     Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because Defendant maintains its principal place of business within the Northern District of Georgia and because a substantial part of the acts or omissions giving rise to this action occurred within this District.

## IV.    FACTUAL ALLEGATIONS

***DEFENDANT'S BUSINESS***

29.    Defendant is the market leader in providing software solutions to the stop loss insurance marketplace. Defendant's clients include insurance carriers, brokers and third-party administrators for health care services.[5] Among Defendant's clients is Blue Shield of California, Plaintiffs and Class Members insurer/administrator.

30.    In the ordinary course of receiving health care services from Defendant's clients, each insured or patient must provide (and Plaintiffs and Class Members did provide) Defendant with sensitive, personal, and private information, such as their:

- address;
- telephone number;
- date of birth;
- Social Security number;
- driver's license number;
- driver's license state;
- medical history including lab results, scans, prescription information, treating/referring physician name, patient number, medical treatment information, medical diagnosis information, medical record number (MRN), health insurance information, Medicare or Medicaid number, username, and password;
- email address/username and password; and
- security question and answer.

31.    All of Defendant's employees, staff, entities, sites, and locations may share patient information with each other for various purposes, as should be disclosed in a HIPAA compliant privacy notice ("Privacy Policy") that Defendant is required to maintain.

32.    Defendant agreed to and undertook legal duties to maintain the protected health and personal information entrusted to it by Plaintiffs and Class Members safely, confidentially, and in

---

[5] https://www.youngconsulting.com/ (last viewed September 5, 2024).

compliance with all applicable laws, including the Health Insurance Portability and Accountability Act ("HIPAA").

33.    The patient and employee information held by Defendant in its computer system and network included the Private Information of Plaintiffs and Class Members.

***THE DATA BREACH***

34.    A Data Breach occurs when cyber criminals intend to access and steal Private Information that has not been adequately secured by a business entity like Defendant.

35.    According to the Notice of Data Incident,[6]

> On April 13, 2024, Young Consulting became aware of technical difficulties in our computer environment. [They] immediately took certain systems offline to contain the incident and launched an investigation, with the assistance of a cybersecurity forensics firm, to determine the nature and scope of the event. The investigation determined that an unauthorized actor gained access to Young Consulting's network between April 10, 2024, and April 13, 2024, and downloaded copies of certain files.

> During [the] review process, [they] worked to determine what information was contained within the involved files, and to identify the individuals whose information may have been involved. That process is ongoing, however during this process Young Consulting identified that information relating to certain data owners, including Blue Shield may have been impacted and provided those data owners with copies of the potentially impacted files. On June 28, 2024, [Young Consulting] provided confirmation to Blue Shield that those files were accessed by an unauthorized actor. [They] then worked to identify appropriate contact information for the potentially impacted individuals to begin providing notification.

> The information potentially affected varies by individual but may include a combination of certain individuals' names, Social Security number, date of birth, and insurance policy/claim information.

---

[6] https://youngconsulting.com/notice/youngconsulting-notice.html

36.     Other sources have reported that Young Consulting, LLC was attacked by known ransomware group BlackSuit.[7] BlackSuit has allegedly made the stolen information available for download.[8]

37.     HHS requires "[i]f a breach of unsecured protected health information affects *500 or more individuals*, a covered entity must notify the Secretary of the breach without unreasonable delay and in *no case later than 60 calendar days* from the discovery of the breach."[9] Further, if "the number of individuals affected by a breach is uncertain at the time of submission, the covered entity should provide an estimate," and later provide an addendum or correction to HSS.[10]

38.     Despite this clear direction to companies, like Defendant's company, that secure PII and PHI, Defendant failed to provide proper notification to HHS.

39.     Defendant's notice letter to its victims was dated August 26, 2024—months after Defendant first discovered the breach.

40.     Defendant had obligations created by HIPAA, contract, industry standards, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

41.     Plaintiffs and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

---

[7] https://www.securityweek.com/950000-impacted-by-young-consulting-data-breach/ (last viewed September 5, 2024)
[8] Id.
[9] U.S. Department of Health and Human Services, *Submitting Notice of a Breach to the Secretary* (Feb. 27, 2023) https://www.hhs.gov/hipaa/for-professionals/breach-notification/breach-reporting/index.html (last viewed September 5, 2024) (emphasis added).
[10] *Id.*

42.    Defendant's data security obligations were particularly important given the substantial increase in Data Breaches in the healthcare industry preceding the date of the breach.

43.    In 2023, a record 3,205 data breaches occurred, resulting in around 353,027,892 individuals' information being compromised, a 78% increase from 2022.[11] Of the 2023 recorded data breaches, 809 of them, or 25.00%, were in the medical or healthcare industry.[12] The 809 reported breaches reported in 2023 exposed nearly 56 million sensitive records, compared to only 343 breaches that exposed just over 28 million sensitive records in 2022.[13]

44.    Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack.

45.    In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[14]

46.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***DEFENDANT FAILS TO COMPLY WITH FTC GUIDELINES***

47.    The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should shape all business decision-making.

---

[11]    *See* Identity Theft Resource Center, *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last visited September 5, 2024).
[12] *Id*.
[13] *Id*. at 11, Fig.3.
[14] Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack, Security Magazine* (Nov. 23, 2020), *available at* https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited September 5, 2024).

48.     In 2016, the FTC update ed its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal patient information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[15] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[16]

49.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

50.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions also clarify the measures businesses must take to meet their data security obligations.

---

[15] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), *available at* www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited September 5, 2024).
[16] *Id.*

51.     These FTC enforcement actions include actions against healthcare providers like Defendant. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.")

52.     Defendant failed to properly implement basic data security practices.

53.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

54.     Defendant was always fully aware of its obligation to protect the PII and PHI of its patients. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### DEFENDANT FAILS TO COMPLY WITH INDUSTRY STANDARDS

55.     As shown above, experts studying cyber security routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

56.     Several best practices have been identified that a minimum should be implemented by healthcare providers like Defendant, including, but not limited to, educating all employees; using strong passwords; creating multi-layer security, including firewalls, antivirus, and anti-malware software; encryption, making data unreadable without a key; using multi-factor authentication; protecting backup data; and limiting which employees can access sensitive data.

57.     Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such

as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

58.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including, without limitation, PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

59.     These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

### DEFENDANT'S CONDUCT VIOLATES HIPAA AND REVEALS ITS INSUFFICIENT DATA SECURITY

60.     HIPAA requires covered entities such as Defendant to protect against reasonably anticipated threats to the security of sensitive patient health information.

61.     Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

62.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules

include 45 C.F.R. § 164.306(a) (1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

63.     A Data Breach such as the one Defendant experienced, is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule:

> A breach under the HIPAA Rules is defined as, "...the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." *See* 45 C.F.R. 164.40.

64.     Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate they failed to meet mandated by HIPAA regulations.

## V.     DEFENDANT'S BREACH

65.     Defendant breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and its data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.  Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.  Failing to adequately protect patients' Private Information;

    c.  Failing to properly monitor its own data security systems for existing intrusions;

    d.  Failing to ensure that vendors with access to Defendant's protected health data employed reasonable security procedures;

    e.  Failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

    f.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

    g.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

h.  Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

i.  Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

j.  Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules related to individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

k.  Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

l.  Failing to train all members of Defendant's workforce effectively on the policies and procedures about PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b); and/or

m.  Failing to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as they had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 C.F.R. § 164.304, definition of "encryption").

66.  As the result of computer systems needing security upgrading, inadequate procedures for handling emails containing ransomware or other malignant computer code, and inadequately trained employees who opened files containing the ransomware virus, Defendant negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

67.  Plaintiffs and Class Members now face an increased risk of fraud and identity theft.

**DATA BREACHES PUT CONSUMERS AT AN INCREASED RISK OF FRAUD AND IDENTIFY THEFT**

68.  Data Breaches such as the one experienced by Defendant's clients in the health care industry are especially problematic because of the disruption they cause to the overall daily lives of victims affected by the attack.

69.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[17]

70.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[18]

71.     Identity thieves use stolen personal information such as Social Security numbers for various crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

72.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

---

[17] U.S. Government Accountability Office, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), *available at* https://www.gao.gov/new.items/d07737.pdf (last visited September 5, 2024) ("GAO Report").
[18] Federal Trade Commission, *What To Do Right Away* (2024), *available at* https://www.identitytheft.gov/Steps (last visited September 5, 2024).

73.     Theft of Private Information is also gravely serious. PII/PHI is a valuable property right.[19] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

74.     Theft of PHI is gravely serious: "A thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[20] Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII/PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

75.     It must also be noted there may be a substantial time lag—measured in years— between when harm occurs versus when it is discovered, and between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which studied data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

---

[19] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets,* 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[20] *See* Federal Trade Commission, *Medical Identity Theft, available at* http://www.consumer.ftc.gov/articles/0171-medical-identity-theft (last visited September 5, 2024).

76.     Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

77.     There is a strong probability that all the stolen information has been dumped on the black market or will be dumped on the black market, meaning Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiffs and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

78.     Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[21] PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

79.     For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for more credit lines.[22] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[23] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's

---

[21] Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), *available at* https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited September 5, 2024).
[22] Social Security Administration, *Identity Theft and Your Social Security Number* (2018), *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited September 5, 2024).
[23] *Id* at 4.

employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

80.     It is also hard to change or cancel a stolen Social Security number.

81.     An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[24]

82.     Medical information is especially valuable to identity thieves. According to account monitoring company LogDog, coveted Social Security numbers were selling on the dark web for just $1 in 2016—the same as a Facebook account. That pales in comparison with the asking price for medical data, which was selling for $300 and up.[25]

83.     In recent years, the medical and financial services industries have experienced disproportionally higher numbers of data theft events than other industries. Defendant therefore knew or should have known this and strengthened their data systems accordingly. Defendant were put on notice of the substantial and foreseeable risk of harm from a data breach, yet they failed to properly prepare for that risk.

## VI.     PLAINTIFFS' EXPERIENCES

84.     Plaintiffs Jon and Lauren Henson are and at all times mentioned herein were individual citizens residing in Pleasant Hill, California.

---

[24] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available *at*      http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited September 5, 2024).
[25] Paul Ducklin, *FBI "ransomware warning" for healthcare is a warning for everyone!*, Sophos (Oct. 29, 2020) *available   at*   https://news.sophos.com/en-us/2020/10/29/fbi-ransomware-warning-for-healthcare-is-a-warning-for-everyone/ (last visited September 5, 2024).

85.     Plaintiffs are both insured through Blue Shield of California, and were prior to the Data Breach

86.     As a condition of receiving healthcare benefits from Blue Shield, Plaintiffs provided their Private Information to Young Consulting.

87.     When Plaintiffs saw their information may have been stolen, Defendant stated that their PII and PHI may have been either accessed and/or acquired by an unauthorized person ( or criminal) including Plaintiff's "full or partial name, date of birth, government identification information, demographic information, contact information, home address, financial information including, Social security numbers, bank account number, health insurance information, and health information."

88.     Plaintiffs are especially alarmed by the amount of stolen or accessed PII and PHI listed on Defendant's letter. Despite Defendant providing that list, they cannot be sure more of their PII or PHI was exfiltrated. Now they check their bank accounts and credit cards throughout the day each day, spending approximately an hour per week just monitoring accounts because of Defendant's Data Breach.

89.     Plaintiffs know cybercriminals often sell Private Information, and that their PII or PHI could be abused months or even years after a data breach. In this case, the cybercriminals are known individuals who frequently post and/or sell Private Information to the public.[26] These cybercriminals reportedly made the stolen PII and PHI from Defendant available for download on their website.[27]

---

[26] https://www.prnewswire.com/news-releases/privacy-alert-young-consulting-and-blue-shield-of-california-under-investigation-for-data-breach-of-over-954-000-patient-records-302236438.html (last viewed September 5, 2024)
[27] *Id.*

90.     Had Plaintiffs been aware that Defendant's computer systems were not secure, they would not have entrusted Defendant with their personal data.

### VII.   PLAINTIFFS' AND CLASS MEMBERS' DAMAGES

91.     To date, Defendant has not adequately compensated Plaintiffs and Class Members for the damages they sustained in the Data Breach.

92.     Defendant's offer for only one year of credit monitoring of one credit report (TransUnion) is wholly inadequate as it fails to sufficiently compensate all victims of the Data Breach, who commonly face multiple years of ongoing identity theft, and it entirely provides no compensation for its unauthorized release and disclosure of Plaintiffs' and Class Members' Private Information.

93.     Furthermore, Defendant's credit monitoring advice to Plaintiffs and Class Members places the burden on Plaintiffs and Class Members, rather than on Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach. Rather than automatically enrolling Plaintiffs and Class Members in years of credit monitoring services upon discovery of the breach, Defendant sent instructions to Plaintiffs and Class Members about actions they can affirmatively take to protect themselves.

94.     Plaintiffs and Class Members have been damaged by the compromise and exfiltration of their Private Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

95.     Plaintiffs' Private Information was compromised and exfiltrated by cyber-criminals as a direct and proximate result of the Data Breach.

96.     Plaintiffs were damaged in that their Private Information is in the hands of cyber criminals and now the public, if the criminals have reported accurately.

97.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

98.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Data Breach. Plaintiffs spend several hours a week monitoring their information and accounts for any fraudulent activity.

99.    Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

100.    Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

101.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

102.    Plaintiffs and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

103.    Plaintiffs and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

104.    Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket

expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

      a.   Finding fraudulent charges;

      b.   Canceling and reissuing credit and debit cards;

      c.   Purchasing credit monitoring and identity theft prevention;

      d.   Addressing their inability to withdraw funds linked to compromised accounts;

      e.   Taking trips to banks and waiting in line to obtain funds held in limited accounts;

      f.   Placing "freezes" and "alerts" with credit reporting agencies;

      g.   Spending time on the phone with or at a financial institution to dispute fraudulent charges;

      h.   Contacting financial institutions and closing or modifying financial accounts;

      i.   Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

      j.   Paying late fees and declined payment fees imposed because of failed automatic payments that were tied to compromised cards that had to be cancelled; and

      k.   Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

105.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is password-protected.

106.    Further, because of Defendant's conduct, Plaintiffs and Class Members are forced to live with the anxiety that their Private Information —which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

107.   As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## VIII.   <u>CLASS ACTION ALLEGATIONS</u>

108.   Plaintiffs brings this action on behalf of themselves and on behalf of all other persons similarly situated.

109.   Plaintiffs proposes the following Class definition, subject to amendment as appropriate:

**All persons whose Private Information was compromised because of Defendant's Data Breach (the "Class").**

110.   Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

111.   Plaintiffs reserve the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery. The proposed Class meets the criteria for certification under Rule 42(a), (b)(2), and (b)(3).

112.   <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. The exact number of Class Members is unknown to Plaintiff now, but Defendant has provided notice to over 950,000 individuals.

113.   <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

  a.   Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.  Whether Defendant's data security systems prior to and during the Data Breach adhered to industry standards;

e.  Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f.  Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.  Whether Plaintiff and Class Members suffered legally cognizable damages from Defendant's misconduct;

i.  Whether Defendant's conduct was negligent;

j.  Whether Defendant's conduct was per se negligent;

k.  Whether Defendant's acts, inactions, and practices complained of herein breached the contract with their third-party beneficiaries;

l.  Whether Defendant were unjustly enriched;

m. Whether Defendant failed to provide notice of the Data Breach promptly; and

n.  Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

114.  <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, among other things, all Class Members were injured through the common misconduct of Defendant. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other

Class Members, and no defenses are unique to Plaintiffs. Plaintiffs'f claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

115.    <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

116.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

117.    <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

118.    Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

119.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

120.    Likewise, issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance matter and the parties' interests therein. Such issues include, but are not limited to:

    a.  Whether Defendant failed to timely notify the public of the Data Breach;

    b.  Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

    c.  Whether Defendant's security measures to protect their data systems were reasonable considering best practices recommended by data security experts;

    d.  Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

    e.  Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

    f.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

121.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## IX.   CAUSES OF ACTION

### FIRST COUNT
### NEGLIGENCE
### (On Behalf of Plaintiff and All Class Members)

122.   Plaintiffs re-allege and incorporates paragraphs 1-121 as if fully set forth herein.

123.   Defendant required its client's customers, including Plaintiffs and Class Members, to submit non-public personal information as a condition of receiving services.

124.   By collecting and storing this data in Defendant's computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period and to give prompt notice to those affected in the case of a Data Breach.

125.   Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

126.   Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiffs and Class Members, which is recognized by laws and regulations including, but not limited to, HIPAA, as well as common law. The special relationship arose because Defendant was entrusted with their confidential Private Information as a condition of receiving services with Defendant's clients.

127.   Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or

28

disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all the healthcare, dental, and/or medical information at issue constitutes "protected health information" within the meaning of HIPAA.

128.   In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

129.   Defendant's duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

130.   Defendant breached its duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.   Failing to adequately monitor the security of its networks and systems;

c.   Allowing unauthorized access to Class Members' Private Information;

d.   Failing to detect timely that Class Members' Private Information had been compromised;

e.   Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

131.   It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach

of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

132.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

133.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

134.    Defendant's negligent conduct is ongoing, in that they still hold the Private Information of Plaintiffs and Class Members in an unsafe and unsecure manner.

135.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class Members.

**SECOND COUNT**
**THIRD PARTY BENEFICIARY CONTRACT**
**(On Behalf of Plaintiff and All Class Members)**

136.    Plaintiffs re-allege and incorporates paragraphs 1-121 as if fully set forth herein.

137.    Upon information and belief, Defendant entered into virtually identical contracts with its clients to provide software solutions, which included data security practices, procedures and protocols sufficient to safeguard the Private Information that was to be entrusted to Defendant's software.

138.    Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their Private Information that Defendant agreed to receive and protect. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties, and Plaintiffs and Class Members were direct and express beneficiaries of such contracts.

139.    Defendant knew that if it were to breach these contracts with its clients, including Blue Shield of California, Plaintiffs and the Class Members would be harmed.

140.    Defendant breached its contracts with its clients and, as a result, Plaintiffs and Class Members were affected by this Data Breach when Defendant failed to use reasonable data security and/or business associate monitoring measures that could have prevented the Data Breach.

141.    As foreseen, Plaintiffs and the Class Members were harmed by Defendant's failure to use reasonable data security measures to securely store and protect the files in Defendant's care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information.

142.    Accordingly, Plaintiffs and Class Members are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

### THIRD COUNT
### NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and All Class Members)

143.    Plaintiffs re-allege and incorporates paragraphs 1-121 as if fully set forth herein.

144.    Under the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

145.    Under HIPAA, 42 U.S.C. § 1302d, et seq., Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Private Information.

146.    Under HIPAA, Defendant had a duty to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." See definition of encryption at 45 C.F.R. § 164.304.

147. Defendant breached its duties to Plaintiffs and Class Members under the Federal Trade Commission Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

148. Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

149. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

150. The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that by failing to meet its duties, and that Defendant's breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

151. As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

**FOURTH COUNT**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

152. Plaintiffs re-allege and incorporates paragraphs 1-121 as if fully set forth herein.

153. Plaintiffs bring this claim individually and on behalf of all Class Members. This count is plead in the alternative to Plaintiffs' third party beneficiary contract count above.

154. Plaintiffs and Class Members conferred a monetary benefit on Defendant. They provided Defendant with their Private Information. In exchange, Defendant should have provided adequate data security for Plaintiffs and Class Members.

155.    Defendant knew that Plaintiffs and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiffs and Class Members for business purposes.

156.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments on behalf of or for the benefit of Plaintiffs and the Class Members. As such, a portion of the payments made for the benefit of or on behalf of Plaintiffs and Class Members are to be used to provide a reasonable level of data security.

157.    Defendant, however, failed to secure Plaintiffs and Class Members' Private Information and, therefore, did not provide adequate data security in return for the benefit Plaintiffs and Class Members provided.

158.    Defendant enriched themselves by saving the costs Defendant reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Personal Information. Rather than providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Plaintiffs and Class Members by using cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

159.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

160.    Defendant failed to secure Plaintiffs' and Class Members' Private Information and thus did not provide full compensation for the benefit Plaintiff and Class Members provided.

161.   Defendant acquired the Private Information through inequitable means in that they failed to disclose the inadequate security practices alleged.

162.   If Plaintiffs and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

163.   Plaintiffs and Class Members have no adequate remedy at law.

164.   As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to:

   a.   actual identity theft;

   b.   the loss of the opportunity of how their Private Information is used;

   c.   the compromise, publication, and/or theft of their Private Information;

   d.   out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information;

   e.   lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft;

   f.   the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and

   g.   future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the lives of Plaintiffs and Class Members.

165.   As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

166.   Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from

them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and Class Members overpaid for Defendant's services.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described above seeks the following relief:

a. For an Order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing Plaintiffs and their counsel to represent the Class, and finding that Plaintiffs are proper representatives of the Class requested herein;

b. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of Plaintiffs' and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

c. For equitable relief compelling Defendant to use appropriate methods and policies related to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendant's wrongful conduct;

e. Ordering Defendant to pay for not less than ten years of credit monitoring services for Plaintiffs and the Class;

f. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g. For an award of punitive damages, as allowable by law;

h. For an award of attorneys' fees and costs per O.C.G.A. 13-6-11 (or any other applicable law or statute), and any other expense, including expert witness fees;

i. Pre- and post-judgment interest on any amounts awarded; and

j. Any other relief that this court may deem just and proper.

## XI.    JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury and tenders the fee.

Dated: September 5, 2024

Respectfully submitted,

*/s/ Ainsworth G. Dudley*

Ainsworth G. Dudley
Georgia Bar No. 231745
adudleylaw@gmail.com
**DUDLEY LAW, LLC**
P.O. Box 53319
Atlanta, GA 30355
Phone: 404-687-8205

**ELLZEY & ASSOCIATES, PLLC**
Jarrett L. Ellzey*
Texas Bar No. 24040864
Leigh Montgomery*
Texas Bar No. 24052214
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Facsimile: (888) 276-3455
jarett@ellzeyaw.com
leigh@ellseylaw.com

**COUNSEL FOR PLAINTIFF AND PUTATIVE
CLASS ACTION MEMBERS**
(* denotes *pro hac vice* forthcoming)